IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STEVEN J. TAYLOR,

        Plaintiff,

v.                                                          CIVIL ACTION NO.   2:13-cv-33339

JIM RUEBENSTEIN, et al.,[1]

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is the defendants' Motion for Summary Judgment [ECF No. 85].  This matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and the Standing Order of this Court entered on May 31, 2016.  For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this matter to the Magistrate Judge is **WITHDRAWN**.

I.    **Factual and Procedural Background**

The plaintiff, Steven J. Taylor, is an inmate currently housed at the Mount Olive Correctional Complex ("MOCC") in Mount Olive, West Virginia, serving two concurrent fourteen-year sentences following his conviction on two counts of first degree robbery, to be followed by a ten-year consecutive sentence for assault during

---

[1] The misspelling of Mr. Rubenstein's name in the style of this case reflects the plaintiff's original misspelling of his name in the Complaint [ECF No. 2].

the commission of a felony, and another consecutive one-to-five year sentence for unlawful wounding. Taylor Depo. Ex. 1 at 8, 26–27,32 [ECF No. 85].[2] He has been in custody since 2007. *Id.* at 30. His minimum discharge date is 2023, unless he is granted parole. *Id.* at 29–30.

The Verified Amended Complaint alleges that, on June 5, 2013, Taylor, who was housed in Pod 6, Cell 607 of the Quilliams II segregation unit at MOCC, was taken from his cell by Correctional Officer Smith (who is not a defendant herein) to attend a magistrate hearing. Verified Am. Compl. ¶ 15 [ECF No. 5]. At the conclusion of the hearing, Officer Smith escorted him back to his pod. *Id.* ¶ 16. Upon entering the pod, Taylor noticed that fifteen prison officials and correctional officers were also present: Warden David Ballard, Associate Deputy Warden of Security Paul Perry, Correctional Officer Lt. Clifford, Correctional Officer Sgt. Penick, Correctional Officer Sgt. Blagg, Correctional Officer Cpl. Hudson, Correctional Officer Cpl. Martens, Counselor Josh Ward, Unit Manager James McCloud, and six other unnamed individuals. *Id.* ¶ 17.

Taylor was approached by Martens and was secured to a table in the middle of the pod with a second set of leg shackles.[3] *Id.* ¶ 18. After he was in a seated position and secured to the table, Taylor asked inmate Richard Ruble, who was cuffed and

---

[2] The facts are set forth in the light most favorable to the plaintiff and as presented by the plaintiff. Because the plaintiff is proceeding *pro se*, his documents must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[3] Per policy, Taylor was already handcuffed behind his back and had on leg shackles to be transferred to and from his segregation cell. *See* Verified Am. Compl. ¶ 18.

2

shackled at a nearby phone, "What [is] going [on]?" *Id.* ¶¶ 19-20. Taylor alleges that Martens then approached him and told him to "shut the fuck up." *Id.* ¶ 21. Taylor told Martens that "he had no right to speak to him like that" and Martens replied "I got something to shut you up." He then exited the pod and returned brandishing a can of oleoresin capsicum ("OC spray"),[4] and said "you'll shut the fuck up now bitch." *Id.* ¶¶ 22–23.

At that point, Unit Manager James McCloud and Counselor Josh Ward approached the table, and Taylor explained that he was being verbally abused and threatened by Martens. *Id.* ¶ 24. McCloud and Ward replied, "You better shut the fuck up then," and said, "We are under Marshal [sic] Law and authorized to use whatever force we feel is necessary." *Id.* ¶ 25. Cpl. Andrew Hudson also approached with a pepper ball gun and pointed it at Taylor at point blank range. *Id.* ¶ 26.

Taylor said, "Please don't shoot" and was then immediately sprayed directly in the face and torso area by Martens with two ten-second bursts of OC spray from approximately two to three feet away. *Id.* ¶¶ 27–28. McCloud and Ward continued to verbally abuse and threaten Taylor. *Id.* ¶ 29.[5]

Taylor begged to be decontaminated, stating that his "face was on fire," and he

---

[4] Throughout his documents, Taylor interchangeably refers to this substance as "mace," "OC Spray" and "pepper spray." I will use the term "OC spray" herein.

[5] Specifically, Taylor alleges that they called him a "bitch" and a "pussy," asked him "how did he like the taste of pepper spray," and told him "[h]e would shut up next time." *Id.* ¶ 30.

3

"was having trouble breathing." *Id.* ¶ 31. He was told by Ward and McCloud that "[h]e could breathe fine" and "he could sit there awhile" and "that he better shut up or they would spray him again." *Id.* ¶ 32. Taylor claims that he subsequently lost consciousness and that, when he came to, Ward and McCloud were holding him up by his shirt and beating on his chest. *Id.* ¶ 33. Taylor called out for help from the defendants Ballard and Perry, but McCloud and Ward again told Taylor "to stop being a little bitch" and "to shut the fuck up" or "they would spray him again." *Id.* ¶¶ 34–35. Although he was still having difficulty breathing and was on the verge of losing consciousness for a second time, Taylor was forced to remain shackled to the table for approximately twenty minutes before being decontaminated and evaluated by Nurse Beth Estep. *Id.* ¶¶ 36–37.

Taylor alleges that, as a result of the excessive force used by Martens, McCloud, and Ward, and as a result of McCloud's refusal to provide medical treatment to Taylor for over twenty minutes, he suffered severe physical and emotional injury. Taylor alleges that he suffered from chemical burns to his face and head, bruises and abrasions to his chest, headaches, dizziness, eye twitching, loss of vision, loss of hearing in his left ear, severe anxiety attacks and nightmares, and loss of consciousness from suffocation. *Id.* ¶¶ 38, 41–42. As for the other defendants, Taylor alleges:

> (43) By witnessing Defendant[] Martens, Defendant[] Ward and Defendant[] McCloud's illegal action, and failing to correct that misconduct, and encouraging the continuation of their misconduct, Defendants David Ballard, Paul Perry, Lt. Clifford, Sgt. Penick, Sgt.

4

> Blagg and Cpl. Hudson are also violating Plaintiff Taylor's rights under the Eighth Amendment to the United States Constitution and causing pain, suffering, physical injury, and emotional distress.

*Id.* ¶ 43. He seeks a declaration that the defendants violated his constitutional rights, as well as compensatory and punitive damages. He also seeks injunctive relief in the form of a transfer to the Northern Correctional Facility and unspecified medical treatment "to fix, treat and medicate any injury done by the assault, and use of excessive force." Verified Am. Compl.. 13–14.[6] On December 15, 2014, Taylor filed an Affidavit containing a sworn statement of facts which mirrors the allegations in his Verified Amended Complaint. *See generally* Taylor Aff. [ECF No. 34].

On September 29, 2015, the defendants filed their Motion for Summary Judgment and a Memorandum of Law [ECF No. 86], asserting that Taylor's Eighth Amendment claims against each of the defendants fail as a matter of law and that the defendants are entitled to qualified immunity. The defendants submitted four exhibits: Taylor's deposition transcript with its exhibits; an incident report prepared by Correctional Officer Carl Aplin concerning the seizure of five homemade weapons found in Taylor's cell; an incident report prepared by Martens concerning the June 5, 2013, incident in which Taylor was sprayed with OC spray and written up for refusing an order and creating a disturbance; and the hearing report from Taylor's disciplinary hearing for the three rules violations he received on June 5, 2013. The defendants

---

[6] The Verified Amended Complaint further states that "Plaintiff Taylor also seeks parole." Verified Am. Compl. ¶ 49. This federal court does not have jurisdiction or authority to grant the plaintiff parole.

did not submit any affidavits or other sworn evidence.

On October 28, 2016, Taylor filed a Response in Opposition to the Motion for Summary Judgment [ECF No. 91]. On November 2, 2015, Taylor filed a second response [ECF No. 96], with additional exhibits, in opposition to the defendants' Motion for Summary Judgment.

On November 13, 2015, the defendants filed a Reply [ECF No. 98]. On November 23, 2015, Taylor filed a Response to the Reply [ECF No. 99], which is an unauthorized sur-reply; however, the defendants did not object to Taylor's sur-reply. This matter is ripe for adjudication.

## II. Standard

To obtain summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a motion for summary judgment does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the court draws any permissible inferences from the fact in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

III.   Discussion

   A.   Excessive Force Claims

Taylor alleges that the defendants' conduct violated his rights as guaranteed by the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment and forbids the unnecessary and wanton infliction of pain. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986). When prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Whitley*, 475 U.S. at 320–21; *Wilkins*, 559 U.S. at 37. "[W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" regardless of whether the resulting injuries are significant. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992); *see also* Martin A. Schwartz, Fed. Jud. Ctr., *Section 1983 Litigation* 57 (Kris Markarian ed., 3d ed. 2014) ("[M]alice is the central inquiry under the Eighth Amendment for a prisoner's claim alleging the use of excessive force by prison guards.").

The Supreme Court in *Whitley* elucidated five factors a district court should consider in evaluating whether officers acted maliciously: (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted,[7] (4) the threat reasonably perceived by the

---

[7] In *Hudson*, the Supreme Court held that prisoners who assert Eighth Amendment excessive force claims are not required to establish "significant injury." *See Hudson*, 503 U.S. at 9. Plaintiffs, however,

7

responsible official, and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *Williams*, 77 F.3d at 762.

In examining the *Whitley* factors in the context of this case, I am squarely faced with numerous disputes of material fact in the record. Indeed, every single *Whitley* factor is afflicted with disputes of fact. While he was shackled to a table, Taylor contends that Martens used excessive force against him by twice spraying him with OC spray because he was merely talking. Verified Am. Compl.. ¶ 41. Hudson also approached Taylor and pointed a pepper ball gun at him at point blank range. Taylor also contends that Josh Ward and James McCloud violated his Eighth Amendment rights by verbally abusing him, beating him in the chest, and refusing him medical treatment for over twenty minutes. *Id.* ¶ 42.

Taylor has provided affidavits from other inmates who witnessed this incident and who corroborate his contentions that he was fully restrained and not acting in an aggressive manner or was in any way a threat to the security of the prison; that he was sprayed with two ten-second bursts of OC spray simply for talking; that the correctional officers who surrounded him were verbally abusive to him and left him sitting for more than twenty minutes while he was struggling to breathe; that when Taylor regained consciousness, the defendants Ward and McCloud were beating on Taylor's chest; and that the other prison officials who were present failed to take any

must allege something more than a de minimis injury unless the force used was "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10.

8

action to prevent the incident or to intervene. Verified Am. Compl. Exs. 5–7; Pl.'s Mem. Opp. Summ. J. Exs. 2–5.

Of course, the defendants contest the facts as alleged by Taylor. The defendants generally state that the force used was made in good faith. Additionally, the defendants argue that the force was needed to correct a volatile environment in the pod; the force was necessary considering Taylor's behavioral record and the fact that officials *later* found weapons in Taylor's cell; and the force was tempered because they could have used even more force against Taylor.

Based upon the *Whitley* factors and an examination of the facts taken in the light most favorable to Taylor, I **FIND** that there are genuine disputes of material fact concerning the need for and amount of force used against Taylor by the defendants Martens, Ward, and McCloud. *See, e.g., Henslee v. FNU Singleton*, No. 1:13-cv-90-FDW, 2015 WL 4920260, at \*5 (W.D.N.C. Aug. 18, 2015) ("A correctional officer uses excessive force if he approaches a prisoner and, without any provocation by the prisoner, aside from verbal taunts, sprays pepper spray in the prisoner's face.") (citing *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014); *see also Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) ("[I]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas *or other chemical agents in quantities greater than necessary* or for the sole purpose of infliction of pain."). Moreover, a reasonable juror could infer from the alleged abusive comments Ward and McCloud made to Taylor and the evidence that Taylor was forced to sit

9

untreated for an extended period of time while covered in OC spray that the use of force was maliciously and sadistically executed to inflict pain. Accordingly, I cannot find at this time that the defendants are entitled to judgment as a matter of law regarding Taylor's excessive force claims.

### B. Bystander Liability Claims

Taylor further claims that the defendants Ballard, Perry, Clifford, Penick, Blagg, and Hudson failed to intervene to prevent the alleged violation of his Eighth Amendment rights. Generally, an "officer may incur § 1983 liability only through affirmative misconduct." *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 202 (4th Cir. 2002). "Although personal liability premised on an omission is a disfavored concept, it is well-established that an omission to act, when coupled with a duty to act, may provide a basis for liability." *Id.* at 203. An "officer may not stand by idly while a citizen's constitutional rights are violated by another officer; he has an affirmative duty to intercede on the citizen's behalf." *Browning v. Snead*, 886 F. Supp. 547, 552 (S.D. W. Va. 1995).

The Fourth Circuit has recognized "a cause of action for bystander liability 'premised on a[n] . . . officer's duty to uphold the law and protect the public from illegal acts, regardless who commits them.'" *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting *Randall*, 302 F.3d at 203). Bystander liability is established if: (1) an officer knows that a fellow officer is violating an individual's constitutional rights; (2) the officer has a reasonable opportunity to

prevent the harm; and (3) the officer chooses not to act. *Randall*, 302 F.3d at 204; *see also Bacon v. Wood*, 616 F. App'x 601 (4th Cir. 2015) (citing to this analysis with regard to a bystander liability claim against a correctional officer concerning an inmate's deliberate indifference claim).

Again, genuine disputes of fact remain regarding the circumstances surrounding the force used by the defendants Martens, Ward, and McCloud. Taylor's Affidavit states that during the incident, he begged for help—specifically calling out for Ballard and Perry to intervene. Taylor Aff. ¶ 20. No official intervened; instead, McCloud and Ward told Taylor to "stop being a little bitch" and "shut the fuck up." Verified Am. Compl. ¶ 35. The underlying issue of whether the force used violated Taylor's constitutional right to be free from *excessive* force remains in dispute, and thus a factual prerequisite for establishing bystander liability remains in dispute. Correspondingly, I am unable to rule that as a matter of law Taylor's bystander liability claims fail.

### C. Supervisory Liability Claims

The Fourth Circuit has held that supervisors may be liable for the actions of their subordinates where the supervisor, *by his own conduct*, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations. *See Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the

11

constitutional injuries they inflict on those committed to their care." *Id.* at 798 (quoting *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).

In the recent case of *King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016), the Fourth Circuit recited the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983: "[A] supervisor can be liable where (1) he knew that his subordinate 'was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;' (2) his response showed 'deliberate indifference to or tacit authorization of the alleged offensive practices;' and (3) that there was an 'affirmative causal link' between his inaction and the constitutional injury." *King*, 825 F.3d at 224 (quoting *Shaw*, 13 F.3d 791, 799 (4th Cir. 1994)).[8] In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment. Thus, a prison official cannot be held

---

[8] In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court appeared to have dramatically limited the scope of supervisory liability claims under § 1983, if not completely eliminated it. In *Iqbal*, the Supreme Court stated that "[i]n a § 1983 or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official . . . is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. According to the Court, "purpose rather than knowledge is required to impose *Bivens* liability . . . for an official charged with violations arising from his or her superintendent responsibilities." *Id.*; *see also* Schwartz, *supra*, at 117–19 ("[T]he Court jettisoned the very concept of supervisory liability and held that a supervisor may be found liable under § 1983 or *Bivens* only when the supervisor herself engaged in unconstitutional conduct. . . . [T]he Court rejected the notion that liability may be imposed against a supervisor based on his knowledge of and deliberately indifferent failure to prevent constitutional violations."). Commentators, however, point out that *Iqbal* was a *Bivens* case, and they distinguish the Court's supervisory liability discussion in the *Bivens* context from that of § 1983. *E.g.*, William N. Evans, Comment, *Supervisory Liability After* Iqbal*: Decoupling* Bivens *from Section 1983*, 77 U. Chi. L. Rev. 1401, 1436 (2010) ("[Lower courts] should view *Iqbal* as overturning the incorrect circuit precedents that previously allowed supervisory liability under *Bivens*. But *Iqbal's* § 1983 dicta should be distinguished because Congress expressly incorporated a supervisory duty in § 1983. Thus, *Iqbal* should be interpreted as decoupling *Bivens* from § 1983 in the context of supervisory liability.").

12

liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive. *Id.* at 838.

Taylor has submitted documentation concerning prior uses of force against other inmates in the MOCC segregation units to support his assertion that there is a widespread pattern of abusive conduct which posed a pervasive and unreasonable risk of harm and emanated from a sanctioned policy allowing such routine use of force against inmates without regard to policy or constitutional standards (colloquially known as "Martial Law"). Taylor asserts that such documentation supports a finding that continued inaction by the various supervisory defendants to investigate, supervise, and discipline correctional officers led to his injury and justifies their liability for the constitutional violations that he suffered. *See* Pl.'s Mem. Opp. Mot. Summ. J.; Pl.'s Mot. to Deny Mot. Summ. J. [ECF No. 96].

The defendants' arguments against supervisory liability largely rest on their assertion that there was no underlying constitutional violation, a fact which clearly remains in dispute. The evidence provided by Taylor creates a genuine dispute of material fact concerning whether any of the defendants acting in a supervisory capacity were deliberately indifferent to or tacitly authorized pervasive constitutional violations which led to Taylor's injury. Having already found that there are genuine disputes of material fact concerning Taylor's Eighth Amendment excessive force claims, I also **FIND** that such factual disputes prevent the resolution of Taylor's supervisory liability claims at this time.

13

Yet, to the extent that Taylor suggests that Rubenstein, who, unlike the remaining defendants, was not present at the time of the incident, may be held liable because of his role in receiving and affirming administrative grievances, it is well-established that denying a prisoner's grievances, by itself, "is not the type of personal involvement required to state an [Eighth Amendment] claim." *See, e.g.*, *Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867, at *9 (S.D. W. Va. Sept. 30, 2015) (recognizing the inadequacy of allegations involving supervisory liability claim based upon denial of grievances); *see also Larson v.* Meek, 240 F. App'x 777, 780 (10th Cir. 2007); *Ferris v. Jones*, No. 4:14-cv-454, 2015 WL 4668297, at *9 (N.D. Fla. Aug. 5, 2015). I **FIND** that Taylor has provided an insufficient basis upon which to establish supervisory liability as to Rubenstein. Accordingly, I **FIND** that there are no genuine disputes of material fact concerning this issue, and Rubenstein is entitled to judgment as a matter of law as to Taylor's supervisory liability claim.

### D. Qualified immunity

The defendants further assert that all of Taylor's claims against them are barred by the doctrine of qualified immunity. Government officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of discretionary functions unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225

F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. *Id.* If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. *Id.*

When viewed in the light most favorable to Taylor and reconciling disputes of fact in his favor, Taylor's factual allegations sufficiently allege that his clearly-established Eighth Amendment constitutional rights were violated. *See, e.g., Henslee v. FNU Singleton*, No. 1:13-cv-90-FDW, 2015 WL 4920260, at *5 (W.D.N.C. Aug. 18, 2015) ("A correctional officer uses excessive force if he approaches a prisoner and, without any provocation by the prisoner, aside from verbal taunts, sprays pepper spray in the prisoner's face.") (citing *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014). But there are genuine disputes of material fact regarding the circumstances surrounding the incident between Taylor and the defendants. The Supreme Court has stressed that a defendant's qualified immunity summary judgment motion should be assessed in the usual manner for ruling on other summary judgment motions under the Federal Rules of Civil Procedure. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1865–68 (2014) (per curiam) (reminding lower courts that,

when resolving qualified immunity summary judgment motions, they may not resolve genuine disputes of fact in favor of the defendants, and they must view the facts in the light most favorable to the non-moving party); *see also* Schwartz, *supra*, at 157 ("If . . . the facts as interpreted in the light most favorable to the plaintiff indicate a violation of clearly established federal law, and the discovery indicates material facts are in dispute, then summary judgment is not possible." Accordingly, I **FIND** that the defendants are not entitled to qualified immunity on any of Taylor's claims at this time.

## IV. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that the defendants' Motion for Summary Judgment [ECF No. 85] is **GRANTED in part and DENIED in part.**

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion & Order to counsel of record and any unrepresented party.

ENTER: September 28, 2016

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE